UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

TYROME HARRIS, SR.                                            PETITIONER

VS.                            5:18-CV-00157-DPM/JTR

WENDY KELLEY, Director,
Arkansas Department of Correction                            RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge D. P. Marshall, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction

Pending before the Court is a *pro se* § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, Tyrome Harris ("Harris"). *Doc. 2.* Before addressing Harris's habeas claims, the Court will review the procedural history of the case in state court.

1

On February 8, 2016, Harris appeared, with counsel, in the Circuit Court of Pulaski County, Arkansas, and, entered a negotiated guilty plea to one count of battery in the first degree.[1]  *State of Arkansas v. Tyrome Harris, Sr*, Pulaski County Circuit Court Case No. 60CR-14-3398.

On March 7, 2016, Harris appeared, with counsel, for a sentencing hearing.[2] The trial court sentenced Harris to fifteen years' imprisonment, the same sentence recommended by probation, plus an additional five year suspended sentence.  *Id. at 28*;  *Doc. 9-3, Tr. 2-3*.

By entering an unconditional plea, Harris waived the right to challenge his conviction on direct appeal.[3]

_____

[1]  Circuit Judge Leon Johnson presided.  Harris was represented by public defender Bill Simpson ("Mr. Simpson").  A transcript of the change of plea hearing is found at *Doc. 9-2*, *Tr. 1-7*.  By pleading guilty, Harris admitted that he used a 2x4 board to beat the victim, a woman he had been involved with romantically.  His blows fractured the victim's face, nose, and skull.

[2]  During the hearing, a Victim Witness Coordinator testified that the victim still bore visible signs of Harris's beating, including facial scars and misaligned teeth.  She also testified about Harris's actions at an earlier hearing, when he stared at the victim and made kissing gestures in her direction.  *Doc. 9-2, Tr. 12-15*.  Detective Ira Whitfield, who investigated the case, testified about photographs he took of the victim's significant injuries and the bloody condition of the house where the beating occurred.  *Id. at 15-21*.
    Harris made a brief statement of allocution in which he acknowledged that his actions were "foolish" and his love was "reckless."  He requested "mercy" and "a little leniency."  *Id. at 22-23*.

[3]  *See* Ark. R. App. P. Crim. 1(a) ("Except as provided by ARCrP 24.3(b) there shall be no appeal from a plea of guilty or nolo contendre.");  Ark. R. Crim. P. 24.3(b) (With the court's permission and the prosecutor's consent, "a defendant may enter a conditional plea of guilty or nolo contendre, reserving in writing the right, on appeal from the judgment" to review adverse

On April 22, 2016, Harris filed a *pro se* Rule 37 petition for postconviction relief in the trial court. *Doc. 9-3, Tr. 5-14*. He alleged his plea-stage counsel, Mr. Simpson, was ineffective because: (1) he had a conflict of interest with the victim; (2) the plea agreement was for no enhancements or habitual offender status; (3) the jail-time credit was incorrect; and (4) he failed to advise Harris that, because of his prior convictions, he would not be eligible for parole. *Id. at pp. 5-14*.

On October 20, 2016, the trial court entered an order denying Harris's Rule 37 petition. *Id. at pp. 29-32*. Harris appealed only one issue: Mr. Simpson's ineffectiveness in failing to advise him that, because his prior violent felony disqualified him from parole, he would be required to serve 100 percent of his sentence. *See* Ark. Code Ann. § 16-93-609.[4] *Id. at 13-17*; *Doc. 9-4, pp. 16-17*.

On February 7, 2018, the Arkansas Court of Appeals affirmed the trial court's denial of post-conviction relief. *Harris v. State*, 2018 Ark. App. 94, 542 S.W.3d 895 ("*Harris I*").

---

determinations or pretrial motions: (1) to suppress seized evidence or a custodial statement; (2) to dismiss a charge as untimely; (3) challenging the constitutionality of the criminal statute at issue).

[4] This statute provides that any person who commits a felony offense after August 13, 2001, and "has previously been found guilty of or pleaded guilty or nolo contendre to any violent felony offense . . . shall not be eligible for release on parole by the board." *Aguilar v. Lester*, 2011 Ark. 329, at 3.

3

On June 14, 2018, Harris initiated this federal habeas action. *Doc. 2.* Respondent, in her Response, argues that Harris's habeas claim should be denied on the merits. *Doc. 9.* Harris has filed a Reply. *Doc. 12.* Thus, the issues are joined and ready for decision.

For the reasons discussed below, the Court recommends that the Petition for a Writ of Habeas Corpus be denied, and the case be dismissed, with prejudice.

## II. Discussion

### A.    The Trial Court's Rejection of Harris's Ineffective Assistance Claim

In his federal habeas Petition, Harris asserts one claim:  Mr. Simpson provided constitutionally inadequate assistance of counsel by failing to advise him, before his guilty plea, that he would not be eligible for parole based on a prior violent felony conviction.[5] *Doc. 2, p. 2.*

The trial court adjudicated this claim, on the merits, in Harris's Rule 37 proceeding:

> Petitioner's final claim for relief states that counsel was ineffective for failing to inform Petitioner that he would be required to serve 100% of his sentence before becoming parole eligible. Petitioner further claims that he was led to believe he would only be required to serve 1/3 or 5 years of the sentence. Petitioner claims this omission rendered his plea

---

[5] In his §2254 habeas Petition, Harris does *not* contend that Mr. Simpson gave him erroneous or affirmatively misleading advice.  Thus, Harris alleges Mr. Simpson committed an error of omission, *not* commission.

involuntary. A review of the record from the sentencing hearing held March 7, 2016, conclusively shows that trial counsel explicitly stated twice on the record that Petitioner would have to serve his sentence day-for-day (Transcript p. 16) and that Petitioner would have to serve 100% of his sentence (Transcript p. 15). The Court finds this claim to be wholly without merit and denies any relief on this ground.

*Doc. 9-3, Tr. 31.*[6]

On appeal, the Arkansas Court of Appeals, applying *Strickland v. Washington*, 466 U.S. 668 (1984), affirmed the trial court's denial of Rule 37 relief:

Here, we are not left with a definite and firm conviction that the trial court made a mistake in finding that *Tyrome's counsel did not fail to inform him that he would have to serve 100 percent of any sentence imposed*. As noted by the trial court in its order, Tyrome's counsel stated on two occasions *during the sentencing hearing* that Tyrome would have to serve 100 percent of any sentence the trial court imposed. Tyrome was present at the hearing. He expressed no surprise or concern about his counsel's comments. Neither did he challenge to the trial court that the comments were contrary to the negotiated plea. Moreover, in his arguments to our court, Tyrome contends that he did not learn he would have to serve 100 percent of his sentence until he was taken into custody by the Arkansas Department of Correction and informed of that fact. The sentencing-hearing comments, where Tyrome was present, clearly rebut that portion of his contention. Still further, it is hard to give credence to his argument that he was told he would have to serve only one-third of his sentence, or five years, as part of his plea negotiation when he did not even know until the sentencing hearing that his sentence would be fifteen years.

---

[6] The trial court accurately referenced what occurred at sentencing, when Mr. Simpson, on Harris's behalf, advocated for a five-year sentence. *Doc. 9-2, Tr. 23-24* ("The main point I want to make to the Court is, based on his prior record, any sentence the Court imposes today, he will have to serve 100 percent . . . he's going to have to serve day-for-day five years or any sentence the Court does impose.").

Finally, in examining the first prong of the *Strickland* standard of review, we conclude Tyrome did not demonstrate that his counsel's performance was deficient. Not only do we find no clear error in the trial court's finding that *Tyrome was informed by his counsel that he would have to serve 100 percent of any sentence imposed*, we also note that our supreme court has held "that there is no constitutional requirement for defense counsel to inform his client about parole eligibility and that the failure to impart such information does not fall outside the range of competence demanded of attorneys in criminal cases." *Paige v. State*, 2013 Ark. 432, at 4, 2013 WL 5883809. Because we have concluded that Tyrome did not establish the first *Strickland* prong (deficient performance by counsel), it is not necessary for us to address the second prong (prejudice).

*Harris I*, 2018 Ark. App. 94, at 5-6, 542 S.W.3d at 898-99 (emphasis added).

### B.    Legal Standard Applicable to Harris's Claim

This Court must conduct a "limited and deferential review" of the state court's full merits adjudication of this ineffective assistance of counsel claim. *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005). To obtain habeas relief, Harris must prove that the Arkansas Court of Appeals' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Rompilla v. Beard*, 545 U.S. 374 (2005). Furthermore, in evaluating the state court's findings of fact, this Court must accept those findings as presumptively correct, and Harris has "the burden of rebutting the presumption of correctness by clear and convincing evidence."

6

*Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011) (quoting 28 U.S.C. § 2254(e)(1)).

Thus, Harris has the heavy evidentiary burden of proving, under *Strickland*, that the Arkansas Court of Appeals' rejection of his ineffective assistance of counsel claim was "unreasonable," *i.e.*, its decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 101-03 (2011).[7]

### C.   Harris Has Failed to Demonstrate That the State Court Unreasonably Adjudicated Harris's Ineffective Assistance of Counsel Claim

Harris argues that Mr. Simpson was obligated to advise him of "all" the consequences of his plea, including his parole ineligibility. *Doc. 12, pp. 1-2*. The Arkansas Court of Appeals rejected this argument on two separate grounds. First, it

---

[7]  Meeting this high bar is a daunting task for a habeas petitioner because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted). For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland*'s high bar [for evaluating ineffective-assistance claims] is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* at 105 (citations omitted). The standards created by *Strickland* and § 2254(d) "are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.*

found Mr. Simpson *did inform* Harris that, if he entered a guilty plea, he would *not* be eligible for parole.  Second, it concluded Mr. Simpson was *not* constitutionally obligated to inform Harris about his parole ineligibility.  *Harris I*, 2018 Ark. App. 94, at 5-6, 542 S.W.3d at 898-99   If this Court concludes that either of those rulings was "reasonable," Harris's habeas claim must be dismissed.  *See Rice v. Collins,* 546 U.S. 333, 342 (2006) (commenting on the interplay between sections 2254(d)(1) and (d)(2) and noting that "[t]he question whether a state court errs in determining the facts is a different question from whether it errs in applying the law").

Harris relies on *Lee v. United States*, 137 S.Ct. 1958 (2017) to support his ineffective assistance of counsel claim.  In *Lee*, the government conceded that Lee's "plea-stage counsel provided inadequate representation when he assured Lee [a permanent resident of the United States but a citizen of South Korea] that he would not be deported if he pleaded guilty" to a drug charge.  *Id*. at 1964.  In fact, Lee faced *mandatory* deportation.[8]  Because the Court's holding in *Lee* was limited to trial

---

[8] The Supreme Court previously had held that deportation consequences *must* be addressed by counsel when advising a non-citizen criminal defendant whether to take a plea deal.  *See Padilla v. Kentucky*, 130 S.Ct. 1473, 1486 (2010) (To comply with the Sixth Amendment, "counsel must inform her client whether his plea carries a risk of deportation."; the Court further observed that "the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country" demands no less.).

counsel's failure to advise his client of deportation risks associated with pleading guilty to a felony, it has *no application* to the facts in this case.

Here, the Arkansas Court of Appeals explicitly found, as a matter of fact, that Harris "*was informed* by his counsel [Mr. Simpson] that he would have to serve 100 percent of any sentence imposed." *Harris I*, 2018 Ark. 94, at 6, 542 S.W.3d 896, 899 (emphasis added). The Court noted that, during the sentencing hearing, held one month after the change of plea hearing, Mr. Simpson explicitly stated: "The main point I want to make to the Court is, based on his prior record, any sentence the Court imposes today, he [Harris] will have to serve 100 percent." *Doc. 9-2, Tr. 23.* Harris was present and heard Mr. Simpson make this argument, but "expressed no surprise or concern about his counsel's comments;" nor did Harris point out to the trial court that "the comments were contrary to the negotiated plea." *Id.*, 2018 Ark. at 5-6, 542 S.W.3d at 898.

In addition, *before* entering his guilty plea, Harris signed a plea statement form in which he acknowledged that he fully understood his rights and "every detail" of his guilty plea. In the form, Harris acknowledged that: (1) if the case went to trial, he believed the State could prove his guilt; (2) he faced a sentence of between five and twenty years in prison; and (3) that no "promises regarding parole eligibility" had been made to induce his guilty plea. *Doc. 9-5, pp. 14-15.* During the change of

plea hearing, Harris represented to the Court that he: (1) signed the form; (2) fully understood his rights; and (3) was knowingly and voluntarily pleading guilty because he was, in fact, "guilty as charged." *Doc. 9-2, Tr. 4*.[9]

Because Harris has failed to demonstrate that any of these findings of fact by the Arkansas Court Appeals were unreasonable, his ineffective assistance of counsel claim fails. However, even if those findings of fact were deemed unreasonable, Harris has failed to demonstrate that the Arkansas Court of Appeals made an unreasonable determination of law in holding . . . that "there is no constitutional requirement for defense counsel [Mr. Simpson] to inform his client [Harris] about

---

[9]    The undisputed facts surrounding the entry of Harris's guilty plea also makes it impossible for him to satisfy the prejudice prong of *Strickland*, which would require him to demonstrate that, had he known about his parole ineligibility, he would have insisted on going to trial. See *Hill*, 474 U.S. at 59; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000) ( "the prejudice inquiry depends largely on whether th[e] affirmative defense might have succeeded, leading a rational defendant to insist on going to trial") (emphasis added); *Bethel v. U.S.*, 458 F.3d 711, 718 (7th Cir. 2006) (a mere allegation by the defendant that he would have insisted on going to trial is not sufficient to establish prejudice).

   Harris makes no real effort to demonstrate prejudice. Instead, he argues that since "parole is always presumed a possibility," prejudice should be presumed. *Doc. 12, p. 3.* This argument is contrary to established federal law.

   The circumstances of Harris's plea further diminish the likelihood that Harris could establish "a reasonable probability that, but for counsel's errors, he would have insisted on going to trial." *Hill*, 474 U.S. at 59. Mr. Simpson successfully negotiated a plea deal for Harris under which the prosecutor agreed to drop the habitual offender sentencing enhancement, a concession that greatly benefitted Harris. In addition, the prosecutor agreed to drop a separate criminal case. *Doc. 9-2, Tr. 3.* The Sentencing Order suggests that, absent the plea bargain, Harris faced a presumptive sentence of 600 months, or 50 years. Thus, the 15-year sentence imposed was 420 months, or 35 years, *below* the presumptive sentence Harris faced if he had insisted on going to trial. *Doc. 9-3, Tr. 2.*

parole eligibility and . . . the failure to impart such information does not fall outside the range of competence demanded of attorneys in criminal cases." *Harris I*, 2018 Ark. App. 94, at 6, 542 S.W.3d 896, 899 (quoting *Paige v. State*, 2013 Ark. 432, at 4, 2013 WL 5883809) (internal quotations omitted).

In *Hill v. Lockhart*, 472 U.S. 52 (1985), the habeas petitioner claimed that his plea was involuntary because his counsel had *misinformed* him that he would be parole eligible after serving one-third of his prison sentence, when in fact state law required him to serve one-half of his sentence to become parole eligible. *Id*. at 54-55. Because the petitioner failed to demonstrate prejudice, the Court held that it was "unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel." *Id*. at 60.

In *Buchheit v. Norris*, 459 F.3d 849 (8th Cir. 2006), the Court, relying on *Hill*, rejected a habeas petitioner's argument that his plea-stage counsel was ineffective because he failed to advise the petitioner that he would be required to serve at least 70 percent of his sentence before becoming parole eligible:

> Because *Hill I [474 U.S. 52]* did not even address the question of whether the failure to inform a defendant of his parole eligibility is professionally unreasonable, we can hardly conclude that the Arkansas courts unreasonably determined that Mr. Buchheit's representation was constitutionally effective.

*Id*. at 852.[10]

Harris claims that his guilty plea was involuntary because Mr. Simpson committed an error of omission – he allegedly failed to inform him about his parole ineligibility.[11] *Doc. 2 at p. 6* (counsel "fail[ed] to advise" him of parole ineligibility); *Doc. 12 at p. 1* (counsel "never advised petitioner of Ark. Act 1805 of 2001"). Such an error of omission, in failing to advise a client that he will not be eligible for parole if he enters a guilty plea, has never been held to constitute constitutionally ineffective assistance of counsel. *See Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008) ("Neither the district court nor Bustos point us to any Supreme Court precedent clearly establishing the proposition that an attorney's representation is constitutionally deficient when he fails to alert a defendant considering pleading guilty that he will not be eligible for parole").

---

[10] After the Supreme Court's decision in *Hill*, referred to as *Hill I* in the *Buchheit* decision, Mr. Hill filed a second habeas petition in which he developed the prejudice prong and ultimately obtained habeas relief. *Hill v. Lockhart*, 877 F.2d 698 (8th Cir. 1989) ("*Hill II*"), vacated, 833 F.2d 53 (8th Cir. 1989), and *Hill v. Lockhart*, 894 F.2d 1009 (8th Cir. 1990) (en banc) ("*Hill III*"). In *Hill II*, the Court determined that plea-stage counsel's "erroneous parole eligibility advice" and failure "to inform his client accurately when asked about that eligibility," coupled with a showing that if the petitioner had been accurately advised, "he would have declined to plead guilty" entitled him to habeas relief. 877 F.2d at 699, 703-704. In *Hill III*, the Eighth Circuit, sitting en banc, adopted the reasoning of the panel decision. 894 F.2d at 1010 ("In some situations incorrect advice about parole will be merely a collateral matter, not significant enough to justify habeas relief. . . . But here, the misadvice was of a solid nature, directly affecting Hill's decision to plead guilty.").

[11] Thus, like the petitioner in *Buchheit*, and unlike the petitioner in *Hill*, Harris does *not* contend that Mr. Simpson provided *erroneous* advice.

12

Thus, Harris has failed to establish there was anything improper, much less unreasonable, about the Arkansas Court of Appeals' rulings that: (1) Mr. Simpson, *in fact*, did advise Harris he would *not* be eligible for parole if he entered a guilty plea; and (2) in any event, Mr. Simpson was not constitutionally obligated to advise Harris of those facts.

### III. Conclusion

The Arkansas Court of Appeals' rejection of Harris's ineffective assistance of counsel claim was neither: (1) "contrary to, or involved an unreasonable application of clearly established Federal law," nor (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this habeas claim should be denied.

IT IS THEREFORE RECOMMENDED THAT:

1.     The Petition for a Writ of Habeas Corpus (*Doc. 2*) be DISMISSED, WITH PREJUDICE; and

2.     A Certificate of Appealability be DENIED; *see* 28 U.S.C. § 2253(c); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

Dated this 15th day of January, 2019.

_____
UNITED STATES MAGISTRATE JUDGE